IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA

      v.

JAMES VINSON,

      Defendant.

Case No.:  20-cr-13-jdp

---

UNITED STATES' BRIEF REGARDING DEFENDANT'S PRIOR FELONY DRUG
CONVICTION AND 21 U.S.C. § 851

---

The United States of America, by its attorney, Scott C. Blader, United States Attorney for the Western District of Wisconsin, and Steven P. Anderson, Assistant United States Attorney for that district, hereby responds to the Court's August 27, 2020 Order, regarding the application of *United States v. Ruth*, 966 F.3d 642 (7th Cir. 2020), to the instant case.  As explained below, *Ruth* is distinguishable from this case and, accordingly, defendant James Vinson's prior Wisconsin conviction for possession with intent to deliver methamphetamine qualifies as a "serious drug felony" pursuant to 21 U.S.C. § 841(b)(1)(B).[1]

I.    Background

    A.    Offense Conduct[2]

---

[1] The government has filed a similar brief in *United States v. Seth Strand*, 20-cr-21-wmc, where the same issue was raised by Judge Conley prior to the plea and sentencing hearing that had also been scheduled on August 27, 2020.

[2] The facts underlying the offense in this case are accurately detailed in the Presentence Investigation Report ("PSR") (Dkt. #25).

1

On December 5, 2019, law enforcement officers used a confidential informant ("CI") to conduct a controlled buy of methamphetamine from the defendant. On that day, the defendant provided the CI with a bag containing methamphetamine in exchange for $1,800. After the deal was complete, the defendant was arrested and the $1,800 cash from the purchase, as well as a small quantity of methamphetamine were located on his person. The CI provided law enforcement with the baggie containing 114.6 grams of methamphetamine including the packaging. In a post-arrest interview, the defendant admitted to selling drugs to support himself. The suspected methamphetamine was sent to be tested and returned a result of 99% pure methamphetamine and a weight of 11.2 grams without the packaging.

B.   Criminal History

Of relevance here, the defendant was convicted, on August 26, 2016, of Possession w/ Intent-Amphetamine(>10-50g) in La Crosse County Circuit Court Case No. 16CF376. (PSR ¶43). While the Judgment of Conviction indicates amphetamine, the PSR correctly notes that the substance in question in that case was methamphetamine. (Id.). The state charged the defendant with unlawful possession with intent to deliver a controlled substance, methamphetamine, in an amount of more than 10 grams but not more than 50 grams, a Class D Felony, contrary to Wis. Stat. § 961.41(1m)(e)3. *See* Criminal Complaint and Amended Judgment of Conviction attached as Government Exhibit A. That offense was punishable by a maximum term of confinement of fifteen years. *See* Wis. Stat. § 961.41(1m)(e)3 (2015-16); Wis. Stat. § 973.01(2)(b)4 (2015-16).

2

The defendant was sentenced to four years of initial confinement followed by four years of extended supervision. That prison sentence was stayed and the defendant was placed on probation for a period of five years. (PSR ¶43). The defendant's probation was later revoked and the stay on his prison sentence was lifted. (Id.).

C.   District Court Proceedings

On January 29, 2020, a grand jury in the Western District of Wisconsin returned an indictment charging the defendant with distributing 50 grams or more of a mixture or substance containing methamphetamine in violation of 21 U.S.C. § 841(a)(1). (PSR ¶2). On May 21, 2020, the government filed an information pursuant to 21 U.S.C. § 851 providing notice to the defendant of the government's intention to seek an enhanced sentence pursuant to § 841(b)(1)(B), based on the aforementioned 2016 felony drug conviction for possession with intent to deliver methamphetamine, in violation of Wis. Stat. § 961.41(1m)(e)3. (PSR ¶4). As a result, the defendant faces a mandatory minimum sentence of ten years in prison and a maximum sentence of life in prison, along with an $8,000,000 fine, a supervised release term of at least eight years, and a $100 criminal assessment. (Id.). The defendant did not object to the § 851 notice. A written plea agreement letter was filed on May 22, 2020, in which the defendant agreed to plead guilty to the single-count information. (PSR ¶5).

At the plea and sentencing hearing on August 27, 2020, this Court raised concerns about the § 851 penalty enhancement based on the defendant's prior State of Wisconsin methamphetamine trafficking conviction, in light of the recent Seventh Circuit decision in *United States v. Ruth*, 966 F.3d 642 (7th Cir. 2020). Specifically, the

3

Court asked whether the defendant's state predicate offense was a categorical match with the federal equivalent of the crime. The overarching question is whether the defendant's prior conviction qualifies as a prior "serious drug felony" within the meaning of 21 U.S.C. § 802(57) for the purposes of enhancing his statutory sentencing range under 21 U.S.C. §§ 841(b)(1)(B) and 851.

II.     The Categorical Approach

The first step in the analysis is determining whether Wisconsin's possession with intent to deliver methamphetamine statute, Wis. Stat. § 961.41(1m)(e), is broader than its federal counterpart, 21 U.S.C. § 841(a)(1). To determine whether a prior drug trafficking conviction qualifies as a prior "serious drug felony" under § 802(57),[3] courts being by applying the categorical approach, which focuses on the elements of the crime of conviction instead of the facts underlying the conviction. *Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016). If the statutory definition of the crime of conviction is the same as

---

[3] 21 U.S.C. § 802(57) states:
The term "serious drug felony" means an offense described in section 924(e)(2) of title 18 for which— (A) the offender served a term of imprisonment of more than 12 months; and (B) the offender's release from any term of imprisonment was within 15 years of the commencement of the instant offense.

18 U.S.C. § 924(e)(2)(A) states:
(A)the term "serious drug offense" means—
    (i) an offense under the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), or chapter 705 of title 46 for which a maximum term of imprisonment of ten years or more is prescribed by law; or
    (ii) an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)), for which a maximum term of imprisonment of ten years or more is prescribed by law;

or narrower than the federal definition, the conviction categorically falls within that definition and the analysis is complete. *United States v. Edwards*, 836 F.3d 831, 835 (7th Cir. 2016). If the state statute or definition is not a categorical match, the analysis continues to determine if the overbroad portion of the statute or definition is divisible. Here, as explained below, the government concedes that the state statute is overbroad. However, the government believes that it is divisible and, under the modified categorical approach, the defendant's prior Wisconsin methamphetamine conviction is a "serious drug felony."

There are two categorical methodologies depending on the statute at issue – the generic-offense method and the conduct-based method. *United States v. Ruth*, 966 F.3d 642, 646 (7th Cir. 2020) (citing *Shular v. United States*, 140 S. Ct. 779, 783 (2020)). The conduct-based categorical method "applies when determining whether a state offense is a 'serious drug offense' under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(2)(A)(ii)". *Id.* (citing *Shular*, 140 S. Ct. at 785). In the present case, using this conduct-based categorical method, "the court asks only whether the prior conviction's elements necessarily entail the same conduct identified in" § 802(57). *Id.* at 647.

On August 28, 2020, the government conferred with counsel at the DEA regarding the drugs and chemicals listed in Wis. Stat. § 961.41(1m)(e). § 961.41(1m)(e) reads as follows:

> (1m) POSSESSION WITH INTENT TO MANUFACTURE, DISTRIBUTE OR DELIVER. Except as authorized by this chapter, it is unlawful for any person to possess, with intent to manufacture, distribute or deliver, a controlled substance or a controlled substance analog. Intent under this subsection may be demonstrated by, without limitation because of enumeration, evidence of the

5

quantity and monetary value of the substances possessed, the possession of manufacturing implements or paraphernalia, and the activities or statements of the person in possession of the controlled substance or a controlled substance analog prior to and after the alleged violation. Any person who violates this subsection is subject to the following penalties:

…

(e) *Phencyclidine, amphetamine, methamphetamine, methcathinone, cathinone, N-benzylpiperazine, and a substance specified in s. 961.14 (7) (L).* If a person violates this subsection with respect to phencyclidine, amphetamine, methamphetamine, methcathinone, cathinone, N-benzylpiperazine, a substance specified in s. 961.14 (7) (L), or a controlled substance analog of phencyclidine, amphetamine, methamphetamine, methcathinone, cathinone, N-benzylpiperazine, or a substance specified in s. 961.14 (7) (L), and the amount possessed, with intent to manufacture, distribute, or deliver, is:

    1. Three grams or less, the person is guilty of a Class F felony.
    2. More than 3 grams but not more than 10 grams, the person is guilty of a Class E felony.
    3. More than 10 grams but not more than 50 grams, the person is guilty of a Class D felony.
    4. More than 50 grams, the person is guilty of a Class C felony.

Wis. Stat. § 961.41(1m)(e). Wis. Stat. § 961.14(7)(L) lists over thirty different substitute cathinones. *See* the full text of Wis. Stat. § 961.14(7)(L) (2015-16), attached hereto as Government Exhibit B.

Upon the government's request, DEA counsel contacted agency chemists and requested a comparison of the substances in Wis. Stat. § 961.41(1m)(e) with substances in the Federal Controlled Substances Act. DEA chemists found that the substances specifically listed in Wis. Stat. § 961.41(1m)(e) (phencyclidine, amphetamine, methamphetamine, methcathinone, cathinone, N-benzylpiperazine) were all regulated by the Federal Controlled Substances Act. However, the chemists found that some of the substituted cathinones listed in § 961.14(7)(L) did not have a scheduled federal

equivalent.⁴ As there are substances that are listed and prohibited under § 961.41(1m)(e) that are not federally regulated, the government concedes that, on its face, § 961.41(1m)(e) is categorically broader than its federal counterpart. Accordingly, it is necessary to move to the second step of the analysis and determine, as relevant here, whether the state statute is divisible by drug type.

### III. Divisibility

To determine whether Wis. Stat. § 961.41(1m)(e) is divisible, the Court should look first to whether there is "a decision by the state supreme court authoritatively construing the relative statute" that establishes which facts are elements and which are means. *Edwards*, 836 F.3d at 836 (citing *Mathis*, 136 S. Ct. at 2256). "A statute is divisible if it lists elements in the alternative, thereby defining multiple crimes." *United States v. Smith*, 921 F.3d 708, 712-13 (7th Cir. 2019) (citing *Mathis*, 136 S. Ct. at 2249). If there is no controlling state court decision, "the text and structure of the statute may provide the answer." *Edwards*, 836 F.3d at 836 (citing *Mathis*, 136 S. Ct. at 2256). For example, "[i]f statutory alternatives carry different punishments, then under *Apprendi* they must be elements." *Mathis*, 136 S. Ct. at 2256 (citing *Apprendi v. New Jersey*, 530 U.S. 466 (2000)).

In analyzing the divisibility of Wis. Stat. § 961.41(1m)(e), the Court need not look further than the applicable jury instruction – Wis. JI-Criminal 6035 (2018). Possession of

---

⁴ 4-methoxy-alpha-pyrrolidinopropiophenone, commonly known as MOPPP, and 3-methoxymethcathinone, commonly known as 3-MMC, are examples of substances that did not have a federal equivalent.

a Controlled Substance with Intent to Deliver [§ 961.41(1m)] with Lesser Included

Offense of Possession of a Controlled Substance requires:

1. The defendant possessed a substance.
2. The substance was (name controlled substance).
3. The defendant knew or believed that the substance was [ (name controlled substance) ] [a controlled substance. A controlled substance is a substance the possession of which is prohibited by law.]
4. The defendant intended to deliver (name controlled substance).

Wis. JI-Criminal 6035 (2018). Reading Wis. Stat. § 961.41(1m)(e) in conjunction with Wis. JI-Criminal 6035, it is clear that the type of substance charged is an element of the crime.

In addition to the jury instructions, there are two instructive cases that merit the Court's attention - *Leonard v. Warden, Dodge Correctional Inst.*, 631 F.Supp. 1403 (E.D. Wis. 1986) and *Melby v. State*, 70 Wis.2d 368 (1975). In *Leonard*, the court analyzed a prior version of Wisconsin's Controlled Substances Act and held that delivering multiple different controlled substances within a single statute constituted a separate offense for each substance. *Leonard*, 631 F.Supp. at 1409. The court found that each substance constituted a separate offense because "the court could sentence the defendant in that case separately and cumulatively as to each count…" *Id.*

Similarly, in *Melby*, the court held that possessing three different controlled substances gave rise to three separate criminal charges. 70 Wis.2d at 382. The court found that "if any of the elements of proof required are different in the crimes charged, then they may be considered separate crimes." *Id.* at 381. In support of its holding, the

8

court reasoned "each substance was different and the illegality of each must be determined independently, without regard to the others." *Id.*

Here, as in *Leonard* and *Melby*, a Wisconsin state prosecutor can charge a defendant with three separate counts and seek three separate sentences for possessing with intent to deliver amphetamine, methamphetamine, and methcathinone, even though they are all listed together in § 961.41(1m)(e). Accordingly, the various drugs listed in § 961.41(1m)(e) cannot be considered different means of committing a single offense. Rather, the various drugs must be considered elements of the offense, which leads to the conclusion that Wis. Stat. § 961.41(1m)(e) is in fact divisible, and the Court should move to the third step in the analysis.

IV.   Modified Categorical Approach

As a result of Wis. Stat. 961.41(1m)(e) being divisible, the next step is for the Court to apply the modified categorical approach to "determine what crime, with what elements, a defendant was convicted of." *United States v. Mathis*, 136 S. Ct. 2243, 2249 (2016). Under the modified categorical approach, courts may examine "a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy)" in order to identify the crime of conviction. *Id.* After the court identifies the crime, it then does "what the categorical approach demands: compare[s] the elements of the crime of conviction ... with the [relevant federal definition]." *Descamps v. United States*, 570 U.S. 254, 257 (2013). "[T]he modified categorical approach helps a court find out which crime the defendant was convicted of when the statute lists several alternative crimes." *Ruth*, 966 F.3d at 649.

9

Here, Wisconsin court records show that the defendant was convicted of Possession with Intent to Deliver Methamphetamine in violation of Wis. Stat. § 961.41(1m)(e)3. Govt. Ex. A. Methamphetamine is a controlled substance under federal law and Wisconsin law. However, that does not end the analysis. *Ruth* instructs the Court to compare the Wisconsin and federal definitions of methamphetamine to ensure that the Wisconsin definition is not overly broad.

Starting with Wisconsin's Uniform Controlled Substances Act, Schedule II includes methamphetamine and any of its "salts, isomers and salts of isomers that are theoretically possible with the specific chemical definition." Wis. Stat. § 961.16(5)(b). According to Wis. Stat. § 961.16(2)(b)(1), "isomer" means an optical isomer as applied to § 961.14(5)(b).

Of critical importance, the federal criminal code defines methamphetamine in a strikingly similar fashion. Under federal law, methamphetamine is defined as "methamphetamine, including its salts, isomers, and salts of isomers." 21 C.F.R. § 1308.12(d)(2). 21 U.S.C. § 802(14) states "isomer means the optical isomer, except as used in schedule I(c) and schedule II(a)(4)." There is no dispute that Schedule I(c) and schedule II(a)(4) do not apply to methamphetamine. Therefore, it is clear that the Federal Controlled Substances Act, just like the Wisconsin Controlled Substance Act, only regulates the optical isomers of methamphetamine.

Given the definitional match between the two statutes, the Court is not presented with the fundamental problem faced by the court in *Ruth*. In *Ruth*, the court found that the Illinois definition of cocaine included positional isomers while the federal definition

10

of cocaine included only optical and geometric isomers. 966 F.3d at 647. As result, the court found that the Illinois statute was categorically broader than its federal counterpart. *Id.* at 648; *see also United States v. De La Torre*, 940 F.3d 938, 952 (7th Cir. 2019) (holding that the Indiana definition of methamphetamine was overbroad because it included geometric isomers). Accordingly, the court held that the defendant's prior methamphetamine trafficking conviction in Illinois could not serve as a "federal drug offense" for federal sentencing purposes. Consistent with the reasoning in *Ruth*, the Court should find that the defendant's prior Wisconsin methamphetamine trafficking is a "serious drug felony" as defined in the Federal Controlled Substances Act.

The defendant may attempt to argue that the inclusion of "salts of isomers that are theoretically possible with the specific chemical definition" in Wis. Stat. § 961.16(5)(b) broadens the statute beyond its federal counterpart. It does not. The plain meaning of "specific chemical designation" is simply chemical formula. *See United States v. Parkinson*, 417 F.Supp. 730, 733 (E.D. Wis. 1976) ("Whether the term used is "controlled substance" or "chemical designation," it is clear that it is the chemical family of a particular drug that is proscribed. In this sense the chemical designation, lysergic acid diethylamide, includes the base substance and any material, compound, mixture or preparation which contains any quantity of the base substance or which contains any of its salts, isomers, and salts of isomers.") Therefore, the additional language in the Wisconsin statute refers only to theoretically possible optical isomers of methamphetamine and salts of optical isomers of methamphetamine. As a result, Wis. Stat. § 961.14(5)(b) is consistent with federal law, as 21 C.F.R. § 1308.12(d)(2) regulates

11

"methamphetamine, its salts, isomers, and salts of its isomers." Stated in another way, any "theoretically possible" salt of an optical isomer of methamphetamine would still be regulated under federal law.

Because Wisconsin's definition of methamphetamine does not criminalize any conduct beyond the reach of the Controlled Substances Act, there is not a realistic probability that Wisconsin prosecutes conduct that is not covered by the Controlled Substances Act. Moreover, the additional statutory language in Wis. Stat. § 961.14(5)(b) appears to be mere surplusage, as it does not broaden the Wisconsin definition of methamphetamine in any meaningful manner.

V.   Conclusion

For the reasons stated, the Court should find that the defendant's prior methamphetamine trafficking conviction pursuant to Wis. Stat. § 961.41(1m)(e) qualifies as a "serious drug felony" under federal law. As a result, pursuant to 21 U.SC. §§ 841(b)(1)(B) and 851, the defendant faces increased penalties at sentencing, including a mandatory minimum sentence of ten years in prison.

Dated this 18th day of September 2020.

                                              SCOTT C. BLADER
                                              United States Attorney

By:   /s/
       STEVEN P. ANDERSON
       Assistant United States Attorney