UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        *Plaintiff,*

vs.                                              Case No. 20-cr-013-jdp

JAMES VINSON,

        *Defendant.*

## DEFENDANT'S REPLY BRIEF REGARDING 21 U.S.C. § 851 AND OBJECTION TO ENHANCED PENALTIES

James Vinson, by counsel, files this brief in reply to the government's brief regarding his prior conviction and 21 U.S.C. § 851. (R. 35.) The defense agrees with the government that Wis. Stat. § 961.41(1m)(e) is overbroad as compared to its federal counterpart, 21 U.S.C. §§ 841(a)(1). But because the Wisconsin statute at issue here is not internally divisible, the modified categorical approach does not apply. Therefore, Mr. Vinson's Wisconsin prior felony drug conviction is categorically excluded as a qualifying predicate offense for purposes of 21 U.S.C. § 851.

Under Wis. Stat. § 961.41(1m)(e), Wisconsin penalizes the possession with intent to distribute, *inter alia*, "a substance specified in s. 961.14(7)(L)," which itself lists over 30 various substances. As the government concedes, some of the substances listed there do not have a scheduled federal equivalent. (R. 35 at 7.) While the defendant accepts the government's concession, it is also worth pointing out that § 961.41(1m)(e) also

criminalizes the possession with intent to distribute phencyclidine (PCP).[1] PCP is listed on Schedule I of Wisconsin's Uniform Controlled Substances Act, which makes it a "controlled substance" pursuant to Wis. Stat. § 961.01(4). Wis. Stat. § 961.14(4) lists PCP as a hallucinogenic substance and includes any of its "salts, isomers, esters, ethers, and salts of isomers." Wis. Stat. § 961.01(12g) then provides that, for purposes of § 961.14(4), "isomer" means an optical isomer, but also includes any positional or geometric isomer.

This, too, sweeps more broadly than what is controlled under federal law. Federally, PCP is considered a Schedule II depressant, rather than a hallucinogenic. *See* 21 C.F.R. 1308.12(e). The federal schedule covers "its salts, isomers, and salts of isomers whenever the existence of such salts, isomers, and salts of isomers is possible within the specific chemical designation." Pursuant to 21 U.S.C. § 802(14), "isomer" refers only to "the optical isomer," with a few exceptions that do not apply to PCP. As such, because Wisconsin regulates positional and geometric isomers of PCP while federal law does not, this is yet another reason why the Wisconsin statute is overbroad. And because Wis. Stat. § 961.41(1m)(e) is not internally divisible, a conviction under that statute is categorically excluded as a predicate offense for enhancing Mr. Vinson's mandatory minimum under 21 U.S.C. § 851.

Wis. Stat. § 961.41(1m) prohibits the possession with intent to manufacture, distribute, or deliver thirteen discrete groups of controlled substances, divided by their own subsections, (a) through (j). Each individual subsection also includes its own penalty

---

[1] Wis. Stat. § 961.14(4)(n).

FEDERAL DEFENDER SERVICES
OF WISCONSIN, INC.

provisions, assigning a class of felony—most commonly based on the quantity of the controlled substance a defendant possessed—which in turns sets the maximum allowable sentence upon conviction. *See* Wis. Stat. § 939.50. Some subsections address only one controlled substance, for example heroin in § 961.41(1m)(d) or LSD in (1m)(f), but several other subsections group together multiple substances, including Mr. Vinson's offense of conviction, (1m)(e), which criminalizes the possession with intent to distribute "phencyclidine, amphetamine, methamphetamine, methcathinone, cathinone, N-benzylpiperazine, a substance specified in s. 961.14(7)(L) or a controlled substance analog" of the same.

Rather than each substance constituting an individual element about which a jury would have to unanimously agree in order to convict, it is the defense's position that the statute lists multiple possible means by which an individual can violate Wis. Stat. § 961.41(1m)(e). This is plain from the text of the statute. Resolution of this question is purely an issue of Wisconsin state law, and the government failed to acknowledge the two key cases dealing with the same—*State v. Derango*, 2000 WI 89, 236 Wis. 2d 721, and *United States v. Franklin*, 2019 WI 64, 387 Wis. 2d 259 (2019). *Derango* is Wisconsin's leading case on jury unanimity in the elements-versus-means context: "The threshold question … is whether the statute creates multiple offenses or a single offense with multiple modes of commission." *Derango* at 732. To resolve this question, the Court "examine[s] four factors: 1) the language of the statute, 2) the legislative history and context of the statute, 3) the nature of the proscribed conduct, and 4) the appropriateness of multiple punishment for the conduct." *Id.* at 732-33. The point is to determine legislative intent:

3

"did the legislature intend to create multiple, separate offenses, or a single offense capable of being committed in several different ways?" *Id.* at 733.

The language of § 961.41 compels the conclusion that the Wisconsin legislature intended to create an offense under (1m)(e) that can be committed in several different ways, specifically by any of the substances enumerated therein. This is clear from the nature of the proscribed conduct and the context of the statute within Wis. Stat. 961.41 as a whole. Because the language of the statute is unambiguous and the context clear, the Court need not consult legislative history to confirm what a plain reading shows. *See State ex. rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, 271 Wis. 2d 633, 663 (2004).

Here, the Wisconsin legislature created thirteen distinct offenses involving separate classes of controlled substances, grouping together some of those that it considered closely related, such as cocaine and cocaine base in subsection (1m)(cm) and methamphetamine, amphetamine, cathinone and chemically-similar substituted cathinones in (1m)(e).[2] Then, based upon those groups, the legislature assessed the appropriate punishment that may be imposed for violating a particular group by including specific penalty provisions in each, as well as potential enhancements for possessing higher quantities. This structure is similar to the Illinois statute at issue in *United States v. Ruth*, 966 F.3d 642 (7th Cir. 2020), specifically 720 ILCS 570/401(c)(2). The *Ruth* court noted:

> We pause here, though, to take a step back and clarify the relevant divisibility question. The government argues vaguely that the "relevant subsection" of the Illinois Controlled Substances Act is divisible. Though

---

[2] *See* https://en.wikipedia.org/wiki/Cathinone

4

FEDERAL DEFENDER SERVICES
OF WISCONSIN, INC.

far from apparent, we think the government suggests merely that subsection (c) is divisible from the rest of section 401 overall. The text makes clear that 720 ILCS 570/401 is *generally* divisible. The provision has almost a dozen subsections and dozens more subparts, each regulating different drugs in different quantities.

…..

No one disputes that Ruth was convicted under subsection (c)(2). So it does not matter for our purposes that the higher level subsections (a), (b), (c), and so on are divisible from each other—we can place Ruth's conviction in the more particular subdivision without recourse to any extra-statutory *Shepard* documents. The only question that matters, then, is whether subsection (c)(2) is itself divisible.

*Id.* at 649-50. The same is true here: no one disputes that Mr. Vinson was convicted under § 961.41(1m)(e). And looking at § 961.41(1m)(e) in the context of 961.41 as a whole, it is clear that *had* the legislature intended subsection (1m)(e) to actually create 46 (or more) distinct offenses because each (chemically-similar) substance was a unique element of the crime, it would have done so.

The government relies on Wisconsin's jury instruction and two cases dealing with prior versions of Wisconsin's Uniform Controlled Substances Act to support its argument that subsection (1m)(e) is internally divisible. (R. 35 at 7-9.) This reliance is misplaced. The defendant in *Melby v. State,* 70 Wis. 2d 368, 370 (1975) was found to be in possession of three different controlled substances when his home was searched pursuant to a warrant. The court held that possession of multiple different drugs during the same moment in time can result in separate convictions, and consequently charged and convicted him under three different statutes. *Id.* at 382. The same would be true for a person who possesses a single drug on multiple occasions or in multiple locations. So,

5

*Melby* doesn't aid the Court in the divisibility analysis. Divisibility does not turn on the number of baggies of drugs a defendant has or whether he has multiple controlled substances in his possession.

Rather, this is analogous to a burglary situation in which someone unlawfully enters both a home and a vehicle parked outside. Regardless of whether a burglary statute with location alternatives (including both buildings and vehicles) is divisible by location, the burglar could be convicted of two crimes, for two acts of burglary. And for present purposes, this is irrelevant. To understand the means-versus-elements question, with burglary we have to:

> suppose there is a factual question about just where a burglary took place. A homeowner victim testifies that someone stole a computer, but he is not sure whether the stolen item was taken from the garage or the recreational vehicle parked outside in the driveway. *See* Wis. Stat. § 943.10(1m)(a) & (e). To convict for burglary, must the State prove, and must the jury decide, beyond a reasonable doubt whether it was the garage or the RV that was burglarized?

*United States v. Franklin*, 895 F.3d 954, 959 (7th Cir. 2018). Translating this to Wis. Stat. § 961.41(1m)(e), the question is not whether a person can be convicted of multiple offenses for multiple acts, including multiple drugs, but whether a person can be convicted of *any* offense if the jury deadlocks on the specific drug involved.

Contrary to the government's assertion, Wisconsin's jury instructions don't help answer this question either. That the instructions for 961.41(1m) would encourage a judge to list the controlled substance at issue just makes sense: are we dealing with cocaine and cocaine base under (1m)(cm), or heroin under (1m)(d), or LSD under (1m)(f), or any of the other 11 groups of controlled substances? Further, more often than not, there is no

6
FEDERAL DEFENDER SERVICES
OF WISCONSIN, INC.

dispute about what the substance actually was so, for practical reasons, the substance is named in the instruction to avoid confusion. The same is true for the Wisconsin burglary statute that was at issue in *Franklin*: it has six different locations that a defendant could burglarize, but was determined by the Wisconsin Supreme Court to list six means rather than different elements. *See* United States v. Franklin, 772 F. App'x 366, 367 (7th Cir. 2019). If it is alleged that the defendant burglarized a motor home, the jury instruction will most certainly specify a motor home. But specifically naming the location of the burglary in the jury instruction does not then make Wisconsin's burglary statute divisible; it makes the instruction easier to understand, even though the court could certainly just list them all. *Franklin*, 387 Wis. 2d at 267. Similarly, listing only one of the substances covered in (1m)(e) in a jury instruction (if it was certain what it was) would not turn the subsection into an internally divisible one, nor would listing every covered controlled substance in the jury instruction mean a defendant would be acquitted.

To accept the government's argument that "the type of substance charged is an element of the crime"[3] under subsection (1m)(e) would mean that the subsection itself creates an untold number of distinct offenses, well over forty-six (from the forty different substituted cathinones listed in § 961.14(7)(L), and the six other controlled substances listed in (1m)(e), as well as all of their analogs), each with a distinct element about which the jury would have to unanimously agree. That would be a tall order: Wisconsin doesn't require the most highly scientific evidence (sometimes no scientific evidence at all) to

---

[3] R. 35 at 8.

FEDERAL DEFENDER SERVICES
OF WISCONSIN, INC.

obtain a drug-trafficking conviction.[4] So it's not hard to imagine that, with forty-six different substances, as well as their chemical analogs, a jury may struggle to find unanimity as to that single element and instead be forced to set the defendant free.[5] That clearly was not the legislature's intent, and if it had been, the legislature would have created distinct, unambiguous statutes.

## CONCLUSION

For the reasons stated above, *Derango* and *Franklin* compel the conclusion that Wis. Stat. § 961.41(1m)(e) is not internally divisible. As such, the modified categorical approach is not applicable here. *Franklin*, 895 F.3d at 958. And because subsection (1m)(e) regulates substances that the federal schedules do not, it is overbroad, and therefore cannot be a predicate for purposes of 21 U.S.C. § 851 under *United States v. Ruth*.

Dated at Madison, Wisconsin, this 25th day of September, 2020.

Respectfully submitted,

James Vinson, Defendant

*/s/ Kelly A. Welsh*
Kelly A. Welsh
Attorney for James Vinson

---

[4] *See State v. Johnson*, 54 Wis. 2d 561, 567 (1972) (allowing testimony of experienced user of LSD to establish that the controlled substance was, in fact, LSD); *State v. Anderson*, 176 Wis. 2d 196, 203 (Ct. App. 1993) (defendant's in custody statement about establishing his familiarity with marijuana due to long-term marijuana use and trading it with others sufficient to establish that the substance was marijuana beyond a reasonable doubt); *State v. Stank*, 288 Wis. 2d 414, 435-437 (evidence sufficient to establish that nearly sixty pills, of three different colors, were all Oxycontin when testing was done on only one and using the *Physician's Desk Reference* to identify all of the others).

[5] This would also be particularly true if a defendant possessed, say, a syringe filled with more than one substance listed under (1m)(e) or a pill containing more than one substance. If the jury couldn't unanimously agree on which substance it was as an element of the offense, then under the government's theory, the jury must acquit. That too, could not have been the legislature's intention.

Federal Defender Services
 of Wisconsin, Inc.
22 East Mifflin Street, Suite 1000
Madison, Wisconsin 53703
Tel: 608-260-9900
Fax: 608-260-9901
kelly_welsh@fd.org